THE HOME INDEMNITY COMPANY, A CORPORATION, APPELLANT, v. DESERT PALACE, INC., A NEVADA CORPORATION, DBA CAESARS PALACE, RESPONDENT.

No. 5830

April 15, 1970                                    468 P.2d 19

*Morse, Graves, Parraguirre & Rose, Ltd.,* and *Kent W. Michaelson,* of Las Vegas, for Appellant.

*V. Gray Gubler,* Las Vegas, for Respondent.

---

## OPINION

By the Court, Collins, C. J.:

This is an appeal from a judgment rendered upon stipulated facts and concerns interpretation of a clause in an insurance contract. The trial judge ruled for respondent. We affirm that ruling.

Appellant, as insurer, entered into a contract of insurance protecting money and securities in transit with respondent which contained the following clause: "Loss of Money and Securities by the actual destruction, disappearance or wrongful abstraction thereof outside the Premises while being conveyed by a Messenger or any armored motor vehicle company, or while within the living quarters in the home of any Messenger."

In that same policy "messenger" was defined to include "any Employee who is duly authorized by the Insured to have the care and custody of the insured property outside the Premises."

The stipulated facts are summarized as follows: A security guard from Caesars Palace was given chips of other casinos in Las Vegas and directed to exchange them with the other casinos for Caesars Palace chips or cash. This procedure was

regularly followed by casinos in Las Vegas. The guard, driving a Caesars Palace car, began his rounds about 8:15 a.m., February 7, 1967. About 10:00 a.m., after making exchanges of chips at seven other casinos, the security guard arrived at the Aladdin Hotel with $10,664 in Caesars Palace chips. He parked the car at the south entrance and, after checking to insure that all the doors were locked, proceeded into the Aladdin Hotel to make a chip exchange, leaving two bags of Caesars Palace chips, weighing 40 or 50 pounds, in the car. Upon returning to the car after being gone about five minutes, the security guard discovered the front door on the driver's side jimmied open and the $10,664 in Caesars Palace chips missing.

The issues to be decided in this appeal are whether, under the terms of the policy:

1.   The chips were in the "care and custody" of the security guard when taken?

2.   The chips were being "conveyed" when taken?

1.   In Richfield Oil Corp. v. Harbor Ins. Co., 85 Nev. 185, 452 P.2d 462 (1969), this court said that in construing the language of an insurance contract, "the intention of the parties should control and the terms of the clause should be taken and understood in their plain, ordinary and popular sense. . . . In determining the intent of the parties a court should consider all the salient facts. . . ." In the case of Gerhauser v. North British and Merc. Ins. Co., 7 Nev. 174, at 185 (1871), this court said, "If . . . there is room for construction or doubt, the benefit of the doubt must be given to the assured." This rule was reiterated in Smith v. North Am. Acc. Ins. Co., 46 Nev. 30, 205 P. 801 (1922). The Nevada rule is in accord with the general rule on the construction of insurance contracts. See 1 Couch on Insurance 2d § 15:14; 10 Id. § 42.64.

2.   Appellant contends "care and custody" means continuous, personal custody of the "messenger" or guard within the meaning of the policy. We do not agree. Webster's New International Dictionary Second Edition, at 650, defines "custody" as: "A keeping or guarding; care, watch, inspection, for keeping, preservation, or *security*." A second definition given is: "control of a thing or person with such actual or constructive possession as fulfills the purpose of the law or duty requiring it . . . ."

In construing language identical to that found in this policy,

the Georgia Court of Appeals said in Atlanta Tallow Co. v. Fireman's Fund Ins. Co., 167 S.E.2d 361, 364–65 (Ga.Ct. App. 1969) (concurring opinions, Deen & Hall, JJ.) that "care and custody" does not mean actual custody, but protective custody, which is satisfied by reasonable attempts to protect and secure the insured property. Similarly, that same court, in an earlier opinion, construing identical policy terms, ruling, however, in favor of the insurer, reasoned: "Since there is a requirement of custody and this requirement extends to various types of property, the standard to be applied must be determined by taking into account the nature of the property being conveyed and the attendant circumstances." Cleveland Ave. Liquor Store v. Home Ins. Co., 156 S.E.2d 202, 204–05 (Ga.Ct.App. 1967) (money bag left on seat of unlocked automobile). While there are cases indicating that "custody" in such a policy means "personal custody", Sansone v. American Ins. Co., 160 So.2d 575 (La. 1964), and Monteleone v. American Employers' Ins. Co., 120 So.2d 70 (La. 1960), we prefer the former rather than the latter construction as more realistic and within the contemplation of the parties.

The Caesars Palace messenger, in his "care and custody" of the chips took reasonable precautions in protecting the insured property from others, as shown by the stipulated facts. If appellant insists on personal, actual custody of the insured property at all times a messenger has custody, it can so word the contract of insurance.

3.   Appellant next argues that the chips were not being "conveyed" when they were taken because the automobile was parked and not in motion or under way, and hence the loss was not covered by the policy terms. The relevant cases construing the words "while being conveyed" are these: J & C Drug Co. v. Maryland Cas. Co., 298 S.W.2d 516 (Mo.Ct. App. 1957); Sansone v. American Ins. Co., supra; O.K. Express Corp. v. Maryland Cas. Co., 198 N.Y.S.2d 105 (App.Div. 1960); Monteleone v. American Employers' Ins. Co., supra; Trad Television Corp. v. Hartford Acc. & Indem. Co., 113 A.2d 47 (N.J.App.Div. 1955); Atlanta Tallow Co. v. Fireman's Fund Ins. Co., supra. *Atlanta Tallow Co.* is the only case decided upon facts similar to the facts in this case, and contains the most persuasive reasoning.

In *Atlanta Tallow Co.,* the messenger stopped en route for lunch, leaving the money he was conveying in a box locked

in the glove compartment of his locked automobile. During the 10-minute interval he was gone from his automobile, it was burglarized and the money was taken. In construing the word "conveyed", the court said: "It cannot reasonably be said that the money was not being transported or carried from the bank to the company premises at the time of the theft, and there is no policy provision which required the automobile to be in actual motion at the time of the disappearance or abstractions of the goods." 167 S.E.2d at 363. We conclude the word "conveyed" includes those periods or instances of stops or nonmotion reasonably necessary to accomplish the insured operation as contemplated by the parties. Examples of those periods or instances of nonmotion would include stops for traffic signals, necessary repairs or fuel, pickups or deliveries, and the like.

Judgment affirmed.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.